UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JILL B.,[1] | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | No. 2:21-cv-00211-MG-JPH |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| *Defendant.* | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

In June 2019, Plaintiff Jill B. applied for both disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI") from the Social Security Administration ("SSA"),

initially alleging a disability onset date of November 16, 2008.  [*See* Filing No. 13-5 at 22.]  Jill

B. subsequently amended her alleged onset date to June 12, 2019.  [Filing No. 13-2 at 35.]  This

amendment made her ineligible for DIB, but she continued to pursue her SSI claim.  [Filing No.

13-2 at 14; Filing No. 13-2 at 35.]  Her SSI application was initially denied on September 23, 2019,

[Filing No. 13-3 at 2-12; Filing No. 13-4 at 13-17], and upon reconsideration on January 24, 2020,

[Filing No. 13-3 at 25-47; Filing No. 13-4 at 33- 39].  Administrative Law Judge Patrick MacLean

(the "ALJ") conducted a hearing on October 16, 2020.  [Filing No. 13-2 at 31-74.]  The ALJ issued

a decision on October 30, 2020, concluding that Jill B. was not entitled to receive benefits. [Filing

No. 13-2 at 11-30.]  The Appeals Council denied review on March 3, 2021.  [Filing No. 13-2 at 2-

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

7.]  On May 7, 2021, Jill B. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g).  [Filing No. 1.]

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  [Filing No. 8.]  For the reasons set forth below, the Court **AFFIRMS** the ALJ's decision denying Jill B. benefits.

## I.
### STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ (and the Appeals Council) applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Id.*  For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch,*

---

[2] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects unless otherwise noted.

981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Jill B. was 48 years old on the date of her amended alleged onset of disability and has a high-school education. [*See* Filing No. 13-2 at 37-38.] Jill B.'s original application alleged that she can no longer work because she suffers from hip and back pain, anxiety, depression, post-traumatic stress disorder ("PTSD"), high blood pressure, and insomnia.[3] [Filing No. 13-6 at 15.] She has prior relevant work experience as a fast-food worker. [Filing No. 13-2 at 24.]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Jill B. was not disabled. Specifically, the ALJ found as follows:

- At Step One, Jill B. had not engaged in substantial gainful activity since June 12, 2019—*i.e.*, the amended alleged onset date. [Filing No. 13-2 at 17.]

- At Step Two, Jill B. had the following severe impairments: "osteoarthritis of the bilateral hips; major depressive disorder; anxiety disorder; and post-traumatic stress disorder (PTSD)." [Filing No. 13-2 at 17.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

- At Step Three, Jill B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments—specifically Listings 1.02 (major joint dysfunction) 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stressor related disorders). As to the "paragraph B" criteria used for Listings 12.04, 12.06, and 12.15, the ALJ found that Jill B. had "moderate" limitations in each of the four areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. [Filing No. 13-2 at 17-18.]

- After Step Three but before Step Four, the ALJ determined that Jill B. had the RFC to perform "light work as defined in 20 CFR 416.967(b) with the following exceptions: she can lift up to 20 pounds occasionally and up to 10 pounds frequently; she can occasionally climb ladders, ropes, scaffolds, ramps, and stairs; she can occasionally balance, stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to unprotected heights; and she is limited to simple, routine, repetitive tasks, learned on the job in 30 days or less, free of fast-paced production requirements, with simple work-related decisions, and only occasional interaction with the public and coworkers." [Filing No. 13-2 at 18-19.]

- At Step Four, the ALJ found that Jill B. was unable to perform her past relevant work as a fast-food worker. [Filing No. 13-2 at 24.]

- At Step Five, relying on the testimony of a vocational expert ("VE") and considering Jill B.'s age, education, work experience, and RFC, the ALJ determined there are jobs existing in significant numbers in the national economy that Jill B. could perform, such as collator, router, and assembler. [Filing No. 13-2 at 24-25.]

### III.
### DISCUSSION

Jill B. raises as single, narrow issue on appeal. She argues that the ALJ did not properly assess the medical opinion provided by her therapist, Lyvon Watt, LCSW. [Filing No. 15 at 3.]

Ms. Watt submitted a "mental capacity assessment" form dated September 30, 2020. [Filing No. 13-7 at 101-103.] Ms. Watt opined that Jill B. was significantly more limited in her mental capabilities than those contained in the RFC and the moderate limitations found by the

ALJ.  [*See* Filing No. 13-7 at 101-103.]   The ALJ found that Ms. Watt's opinion was "not

persuasive" and provided the following rationale:

> I also considered the September 2020 statements of Lyvon Watt, LCSW, who is the claimant's social worker (13F).  I note that Ms. Watt is not an acceptable medical source; however, I have still considered her statements and find that they are not persuasive.  Ms. Watt indicated that the claimant has marked and extreme limitations in areas involving understanding and memory; sustained concentration and persistence; social interactions; and adaptation (Id.).  While Ms. Watt provided some detailed explanation for her questionnaire responses, I find that these explanations do not fully support the opined severity, and are not consistent with other evidence of record.  As previously articulated, the claimant demonstrated improvement with only conservative treatment, and the clinical records and therapy notes do not reflect the severity that would be expected given Ms. Watt's statements and the claimant's testimony, such as inpatient hospitalizations, or the inability to leave the home.  In fact, the claimant reports spending time socializing with neighbors and shopping in stores.  Ms. Watt has also recommended that the claimant leave her home to shop in thrift stores or go to the library.  These recommendations do not support the level of severity indicated by Ms. Watt's questionnaire.

[Filing No. 13-2 at 22-23.]

In her brief, Jill B. correctly points out that revisions to SSA regulations that became

effective March 27, 2017 changed how ALJs evaluate opinion evidence.  [Filing No. 15 at 16.]

Jill B. says that licensed social workers like Ms. Watt are medical sources such that ALJs have an

obligation to fully evaluate their opinions using the criteria set forth in the new regulations, and

that the ALJ failed to adequately do so here.  [Filing No. 15 at 17.]  In particular, Jill B. takes issue

with the ALJ's conclusion that Ms. Watt's opinion was contradicted by other evidence showing

that Jill B. "demonstrated improvement with only conservative treatment," without specifically

identifying that evidence of improvement.  [Filing No. 15 at 17.]  Furthermore, Jill B. argues, Ms.

Watt's opinion was consistent with her treatment notes and that the ALJ mischaracterized certain

treatment notes to create inconsistencies.  [Filing No. 15 at 17-18.]  More specifically, she argues

that the ALJ erred when he said that "Ms. Watt has also recommended that the claimant leave her

home to shop in thrift stores or go to the library." [Filing No. 15 at 15 (quoting Filing No. 13-2 at 23).] She says that this was not a recommendation by Ms. Watts but rather a suggestion of ways that Jill B. might be able to afford certain items. [Filing No. 15 at 18.]

The Commissioner responds that the mental RFC adopted by the ALJ is supported by the substantial evidence, including that Jill B.'s condition improved with conservative treatment. [Filing No. 16 at 5.] The Commissioner acknowledges that the 2017 regulations concerning opinion evidence applies to Ms. Watt's opinion, but says that the ALJ fully satisfied his duties under those regulations. [Filing No. 16 at 6.] On that front, the ALJ says that the ALJ sufficiently discussed the consistency and supportability of Ms. Watt's opinion and that his findings in this regard were supported by the evidence in the record. [Filing No. 16 at 7-8.] As for the thrift store and library reference, the Commissioner contends that the ALJ did not misconstrue the evidence because inherent in Ms. Watt's suggestion that Jill B. go to thrift stores and to the library is that Ms. Watt believed that Jill B. was capable of doing so. [Filing No. 16 at 10-11.] Furthermore, the Commissioner points out the Jill B. testified that she leaves home to run errands. [Filing No. 16 at 11.]

In reply, Jill B. says that the ALJ's decision does not pass muster under the new opinion evidence regulation because the ALJ had an obligation to identify and discuss the record evidence that he found to be inconsistent with Ms. Watt's opinion more specifically than he did. [Filing No. 18 at 1-2.] Jill B. reiterates her argument that the ALJ misconstrued Ms. Watt's statements about visiting thrift stores and libraries because these suggestions "were not instructions to go out and socialize." [Filing No. 18 at 2.]

ALJs are required to evaluate all medical opinions that exist in the case record in accordance with specific regulations and standards. *See* 20 C.F.R. § 416.927; 20 C.F.R.

7

§ 416.920c.  For claims filed before March 27, 2017, those standards included the "treating physician rule," which required an ALJ to give "controlling weight" to a treating source's opinion so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2).

Different standards apply for claims, such as Jill B.'s claim in this case, that were filed after March 27, 2017.  Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. § 416.920c(a).  The term "medical opinion" means "a statement from a medical source about what you can still do despite your impairment(s)."  20 C.F.R. § 416.913(a)(2).  "Medical source" means "individuals licensed as a healthcare worker by the State and working within the scope of their practice," and includes licensed social workers like Ms. Watt.  20 C.F.R. § 416.902(i); *see, e.g.*, *John W. v. Kijakazi*, 2022 WL 768672, at *15 n.12 (N.D.N.Y. Mar. 14, 2022) (finding social worker to be a medical source).

Under the new regulations, the ALJ must evaluate the persuasiveness of each medical opinion by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 416.920c(c).  Notably, the new regulations for evaluating medical opinion evidence require the ALJ to analyze the persuasiveness of "***all*** of the medical opinions" in the record.  20 C.F.R. § 416.920c(b) (emphasis added).

Because the first two factors—supportability and consistency—are the "most important" factors, the ALJ "will explain" how he or she considered them.  20 C.F.R. § 416.920c(b)(2).  *See*

*also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).  By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining four factors."  20 C.F.R. § 416.920c(b)(2).  As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be."  20 C.F.R. § 416.920c(c)(1).  As to the second factor (consistency), "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be."  20 C.F.R. § 416.920c(c)(2).  Here, both sides agree that Ms. Watt's opinion is a "medical opinion" and therefore properly evaluated under the rubric set forth in 20 C.F.R. § 416.920c.

Addressing the first factor—supportability—the ALJ noted that Ms. Watt provided "some detailed explanation for her questionnaire responses" but that there was a lack of evidence backing up the degree of severity to which Ms. Watt opined.  [Filing No. 13-2 at 23.]  The ALJ also noted that Jill B. had demonstrated some improvement with treatment.  [Filing No. 13-2 at 23.]  As for second factor—consistency—the ALJ found that the degree of severity to which Ms. Watt opined was not consistent with the clinical records and therapy notes that the ALJ described in detail earlier in his decision.  [Filing No. 13-2 at 23.]  The ALJ also found the severe limitations to be inconsistent with Jill B.'s own testimony about her daily activities and Ms. Watt's recommendation that Jill B. go to thrift stores or the library.  [Filing No. 13-2 at 23.]  These explanations satisfied the requirements under 20 C.F.R. 416.920c.

Jill B.'s argument that the ALJ had an obligation to specifically list each piece of evidence that was inconsistent with Ms. Watt's opinion is unavailing.  First, the ALJ did expressly identify inconsistencies within the paragraph analyzing Ms. Watt's opinion; he cited Jill B.'s testimony

about her activities, Ms. Watt's assessment that Jill B. was capable of shopping and renting movies from the library, and the absence of any significant interventions.  Second, Jill B.'s argument ignores the longstanding principle that an ALJ's decision is to be read as a whole and with common sense.  *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010).  With that in mind, the question is whether "the ALJ's persuasiveness finding is supported by substantial evidence that allows the court to follow the reasoning from the evidence, based on [Ms. Watt's treatment notes and other medical evidence], to the ALJ's conclusion that [Ms. Watt's] opinion was not persuasive."  *Inman v. Saul*, 2021 WL 4079293, at *3 (N.D. Ind. Sept. 7, 2021).  The ALJ thoroughly documented the medical evidence, including noting that Jill B.'s presentation to Ms. Watt was emotionally unstable—noting that she presented "very sad, hurt, angry, overwhelmed, and anxious, with frequent crying, and sporadic contact" and that she was "slow to engage, had diminished eye contact, a depressed, angry and anxious mood, a tearful affect, and distracted thought process" but that she was nonetheless fully oriented with normal thought content and these symptoms seemed improved on subsequent visits.  [Filing No. 13-2 at 19.]  The ALJ also summarized Jill B.'s reports of the effectiveness and ineffectiveness of her medications (noting that Jill B. says some days it helps and some days it does not).  [Filing No. 13-2 at 19.]

Jill B.'s argument that the ALJ "mischaracterized" Ms. Watt's statements about thrift shopping and going to the library fair no better.  Whether Ms. Watt "suggested" or "recommended" that Jill B. do these activities for financial reasons or therapeutic reasons is irrelevant.  The relevant point identified by the ALJ is that Ms. Watt thought that Jill B. was capable of performing these activities.

In summary, the ALJ applied the proper legal standard in his analysis of Ms. Watt's opinion, and his determination is supported by substantial evidence. Therefore, the ALJ's opinion will be affirmed.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Jill B. benefits. Final judgment will issue by separate entry.

Date: 9/23/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**